IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By tblanchard at 11:45 am, Jan 07, 2019*

| | |
|---|---|
| CHEMTALL INCORPORATED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BASF SE; and BASF CORP.,<br><br>　　　　Defendants. | CIVIL ACTION NO.: 4:17-cv-186<br><br>(Related Case No.: 4:17-cv-251) |

**O R D E R**

This matter is before the Court on Defendants BASF SE and BASF Corp.'s Motion to Stay Proceedings Pending Resolution of the Appeal of Related Action and Motion to Seal the same. (Docs. 171, 174.) Plaintiff Chemtall filed a Memorandum in Opposition and a Motion to Seal the same. (Docs. 195, 199.) Defendants and Plaintiff electronically filed redacted versions of their respective documents on the Court's CM/ECF system, (docs. 174, 199), and manually filed unredacted versions of these documents in paper form with the Court. Defendants also filed a Reply, which did not include any redactions. (Doc. 228.)

After careful consideration and for the reasons set forth below, the Court **GRANTS** Defendants' Motion to Stay, (doc. 174), and Plaintiff's Motion to Seal, (doc. 195), and **GRANTS in part** Defendants' Motion to Seal Multiple Filings, (docs. 171).[1] The Court **DIRECTS** the Clerk of Court to: **STAY** this action until the United States Court of Appeals for the Federal Circuit resolves Defendant BASF Corp.'s appeal of its case docketed in Civil Action Number 4:17-cv-

---

[1] Defendants' Motion to Seal Multiple Filings, (doc. 171), shall remain pending as to their Motion for Summary Judgment for Lack of Standing, (redacted version at doc. 174) and Motion to Exclude the Testimony of Hubert H. Fowler, (redacted version at doc. 177).

251, Appeal, BASF Corporation v. Chemtall Inc., et al., 19-1243 (Fed. Cir. November 30, 2018), ECF No. 2; **STAY** the related miscellaneous actions, which concern motions to compel discovery from third-party subpoena recipients in this case, docketed at Civil Action Numbers 4:18-mc-13 and 4:18-mc-18; and **FILE** Defendants' unredacted Motion to Stay and the Exhibits to Robert R. Riddle's Declaration appended thereto as well as Plaintiff's unredacted Memorandum in Opposition **UNDER SEAL** permanently. Further, as noted below, because the Court entered summary judgment in the case Plaintiff sought to consolidate with this case, Civil Action Number 4:17-cv-251, the Court **DISMISSES as moot** Plaintiff's Motion to Consolidate. (Doc. 32.)

## BACKGROUND

This case concerns Defendants' enforcement of U.S. Patent No. 5,633,329 ("the '329 patent") against Plaintiff. (Doc. 1.) In September of 2014, Defendant BASF Corp. sued Plaintiff Chemtall and its affiliates for infringement of the '329 patent in the United States District Court for the Southern District of Texas. Compl., BASF Corporation v. Chemtall Inc., et al., 4:17-cv-251 (S.D. Ga. Sept. 23, 2014), ECF No. 1 (the "infringement action"). In response to Defendant BASF Corp.'s infringement allegations, Plaintiff initially sought to invalidate the '329 patent via *inter partes* review (IPR) before the United States Patent and Trademark Office's Patent Trial and Appeal Board (PTAB). Id. at ECF No. 28. Defendant BASF Corp.'s infringement action was stayed at Plaintiff's request during the IPR until September 2016, when the PTAB rejected Plaintiff's invalidity arguments raised therein and upheld the '329 patent. Id. at ECF Nos. 28, 31, 64, 77, 83, 88. Following extended litigation, the District Court for the Southern District of Texas transferred the infringement action to this Court on December 19, 2017. Id. at ECF Nos. 288–89.

While in Texas, and also after being transferred to this Court, Plaintiff Chemtall maintained that the '329 patent's claims were not valid, despite the PTAB's preliminary finding of validity.

2

Id. at ECF No. 207. In short, Plaintiff argued that prior art, the Sanyo SANWET® Process, rendered Defendant BASF Corp.'s '329 patent invalid, an argument not made before the PTAB.[2] Id. Plaintiff moved for summary judgment on this theory, id., and, after comprehensive briefing accompanied by a lengthy hearing, the Court granted Plaintiff's Motion and entered judgment in its favor, id. at ECF Nos. 355, 359. Thereafter, on November 9, 2018, Defendant BASF Corp. appealed this Court's summary judgment decision. Id. at ECF No. 362. At present, Defendant BASF Corp.'s appeal in that case remains pending before the Federal Circuit. Appeal, BASF Corporation v. Chemtall Inc., et al., 19-1243 (Fed. Cir. November 30, 2018), ECF No. 2.

Plaintiff commenced this action on October 6, 2017, alleging Georgia state law claims of bad faith patent infringement, unfair business practices, and RICO violations against Defendant BASF SE. (Doc. 1.) Plaintiff then later amended its Complaint to add BASF Corp. as a defendant and to add federal equity law claims. (Doc. 24.) In sum, Plaintiff asserts that Defendants conspired to fraudulently conceal their ownership of the Sanyo SANWET® Process to preserve BASF Corp.'s infringement action against Plaintiff and that Defendants falsely and fraudulently claimed their employees were the original inventors of the '329 patent. (Id. at pp. 2–10.) Plaintiff sought to consolidate this case with the related infringement action because the two cases involve common questions of law and fact, among other reasons. (Doc. 32.) In response to Plaintiff's Amended Complaint, Defendants have filed six dispositive Motions, which are all currently still pending. (Docs. 50–52, 176, 182–83.) In addition to these pending Motions and Defendants' Motion to Stay, the parties have filed a veritable litany of other motions that remain pending. (Docs. 79, 80,

---

[2] See Chemtall Incorporated, et al. v. BASF Corporation, No. IPR2015-00600, BASF Corporation v. Chemtall Inc., et al., 4:17-cv-251 (S.D. Ga. Sept. 9, 2016), ECF No. 83-1 (P.T.A.B. Aug. 2, 2016) (upholding the '329 patent against other putative examples of prior art); (see also Doc. 199, p. 7 & n.2 (explaining that the PTAB did not consider the Sanyo SANWET® Process during IPR).)

84, 98, 100, 102, 112, 114–15, 121, 124, 128, 135, 141, 148–50, 152, 154, 163, 168–69, 171–72, 177–78, 184–85, 190, 194–96, 215–16, 222–23, 237, 245.)  Defendants, however, have not filed an Answer, and the pretrial order deadline has been stayed pending the Court's ruling on Defendants' dispositive motions.  (Doc. 248.)

On November 16, 2018, Defendants filed the instant Motion to Stay Proceedings pending a ruling by the Federal Circuit in BASF Corporation v. Chemtall Inc., et al., 19-1243 (Fed. Cir. November 30, 2018).  (Doc. 174.)  In the appeal, the Federal Circuit will determine whether the issuance of summary judgment on the patent infringement and prior art issues in the infringement action was appropriate.  (Doc. 228, p. 13 n.1.)  Defendants argue that the outcome of this appeal will fundamentally alter the viability of Plaintiff's case here because "at the core of both cases is one question: is the '329 patent invalid in view of the Sanyo SANWET® Process?  If the Federal Circuit definitively decides that the answer is 'no,' the foundation for this case collapses."  (Doc. 174, p. 1.)  As such, Defendants argue that a stay pending their appeal would simplify the issues, reduce the burden on the Court and parties, preserve judicial resources, and protect the Federal Circuit's exclusive patent jurisdiction.  (Id. at pp. 7–10.)  Moreover, Defendants assert Plaintiff would not be unduly prejudiced by a stay given that this litigation has already been ongoing for over four years and the '329 patent is no longer valid.  (Id. at pp. 6–7.)

In turn, Plaintiff argues the Court should refuse to stay this case as Defendants have failed to show a likelihood of success on their appeal or a clear case of hardship or inequity without a stay.  (Doc. 199, pp. 9–10, 15–16.)  Plaintiff states that a stay pending an appeal decision would be highly prejudicial to its case and asserts Defendants are seeking a stay merely as a delay tactic.  (Id. at pp. 9–11.)  Plaintiff argues a stay would create a clear tactical disadvantage by delaying resolution of its outstanding motions to compel discovery, by creating "additional opportunities

for secreting or destroying evidence," by increasing the risk that unidentified elderly witnesses would be unable to testify due to failing health, and by subjecting them to a stay of indefinite duration.  (Id. at pp. 11–12.)  Further, Plaintiff contends that a stay would not simplify the issues because Defendants' alleged misconduct is actionable regardless of the '329 patent's validity and that their "true aim is not to 'simplify' issues, but to relitigate" their case.  (Id. at pp. 13–15.)  Finally, Plaintiff contends a stay would not reduce the burden on the Court as this case is ready for trial on three basic issues[3] and further delay would waste judicial resources.  (Id. at pp. 15–18.)

In their Reply, Defendants urge that "[p]ushing relentlessly forward in this case on the assumption that the summary judgment ruling . . . will be affirmed risks inconsistency and the needless expenditure of judicial and party resources."  (Doc. 228, p. 3.)  Moreover, Defendants contend Plaintiff's argument in opposition rests on an erroneous "likelihood of success" legal standard that does not apply to a discretionary stay of a related action between the same parties.  (Id. at pp. 5–8.)  Defendants again argue that a stay will not prejudice Plaintiff and show that their requested stay is limited in time and scope based on the resolution of their appeal.  (Id. at pp. 8–13.)  Lastly, Defendants reiterate their position that a stay will simplify the issues post-appeal and will reduce both the Court's and the parties' respective burdens.  (Id. at pp. 13–17.)

---

[3] Those issues are: "(i) *why* Defendants made the false factual representations that they did; (ii) *why* Defendants failed to make discovery of their own knowledge of the Sanyo SANWET® Process, its history, and its commercial exploitation by Defendants and their predecessors-in-title; and (iii) *what damages* Chemtall sustained by reason of Defendants' concealment of the Sanyo SANWET® Process and Defendants' false claim, persisted in over many years, that five BASF SE employees purportedly were the original and first inventors of that process."  (Doc. 199, p. 15 (emphasis in original).)

**DISCUSSION**

**I.     Defendants' and Plaintiff's Respective Motions to Seal (Docs. 171, 195)**

In Defendants' Motion to Seal Multiple Filings, they request that the Court place under permanent seal the unredacted versions of three filings: (1) the Motion to Stay Proceedings Pending Resolution of the Appeal of Related Action (specifically, the Exhibits to the Declaration of Robert R. Riddle); (2) the Motion for Summary Judgment for Lack of Standing; and (3) the Motion to Exclude the Testimony of Hubert H. Fowler and exhibits thereto.  (Doc. 171.) Defendants contend sealing these Motions is warranted "because they contain proprietary, confidential business information and/or trade secrets designated confidential by either BASF, Chemtall, Chemtall's experts, or third parties (Sanyo and Daniel International) with whom Chemtall and BASF have entered protective orders regarding the confidentiality of documents produced to the parties."  (Id.)  Defendants also note that both parties have already permissibly filed numerous motions under seal or partially under seal for these reasons.  (Id.)

In its Motion to Seal Memorandum in Opposition to Defendants' Motion to Stay Proceedings, Plaintiff requests that the Court place under seal its response in opposition because it quotes from this Court's sealed summary judgment Order in the infringement action.  (Doc. 195.)  Although Plaintiff believes that the summary judgment Order should be unsealed, it seeks an indefinite seal of this response unless and until the Court unseals that Order.  (Id.)  Plaintiff also seeks to file under seal because its Memorandum quotes from materials that have been designated as highly confidential.  (Id.)  Neither Motion to Seal is opposed.

**A.     Legal Standard**

The right of access to judicial records pursuant to common law is well-established.  See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see also Brown v. Advantage Eng'g,

Inc., 960 F.2d 1013, 1016 (11th Cir. 1992).  This right extends to the inspection and the copying of court records and documents.  See Nixon, 435 U.S. at 597.  The right to access, however, is not absolute.  See Globe Newspaper Co. v. Superior Court for Norfolk Cty., 457 U.S. 596, 598 (1982).  When deciding whether to grant a party's motion to seal, the court is required to balance the historical presumption of access against any significant interests raised by the party seeking to file under seal.  See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001); Newman v. Graddick, 696 F.2d 796, 803 (11th Cir. 1983).  In balancing the interests, courts consider, among other things:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

Romero v. Drummond Co., Inc., 480 F.3d 1234, 1246 (11th Cir. 2005).  Additionally, "[a] party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information."  Id. (citing Nixon, 435 U.S. at 598).

Though a stipulated protective order may provide that documents designated confidential are presumptively protected, a party's calling a document confidential pursuant to a protective order "does not make it so" when it comes to filing the document with the Court.  Estate of Martin Luther King, Jr., Inc. v. CBS, Inc., 184 F.Supp.2d 1353, 1362 (N.D. Ga. 2002).  "[C]onsensual protective orders merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved, a decision ultimately rooted in whether the proponent demonstrates 'good cause.'"  Id.  Even when, as in this case, the motion to seal is presented without any challenge from the litigants, the judge remains "the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to

7

seal the record (or part of it). He may not rubber stamp a stipulation to seal the record.'" Id. at 1363 (quoting Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999)). "Once a matter is brought before a court for resolution, it is no longer the parties' case, but also the public's case." Brown, 960 F.2d at 1016.

### B. Whether the Court Should Seal Defendants' Motion and Plaintiff's Memo

With respect to the documents sought to be sealed here, the limited intellectual property information contained therein is worthy of such protection. This information has already been deemed worthy of being sealed in prior orders in this case. Furthermore, the information that Defendants seek to seal does not pertain to any public officials or matters of significant public concern, but rather relates to proprietary intellectual property. The presence of confidential business and technical information warrants sealing. See, e.g., Corbett v. Transp. Sec. Admin., 767 F.3d 1171, 1183 (11th Cir. 2014) (granting motion to seal proprietary information for advanced imaging technology scanner under Eleventh Circuit rules). Moreover, the unredacted portions of the sealed Motion, Declaration, and Memorandum will be viewable by the public at docs. 174 and 199. As such, both Plaintiff and Defendants have set forth sufficient grounds, pursuant to Local Rule 79.7, to seal these documents. Accordingly, the Court **GRANTS in part** Defendants' Motion to Seal Multiple Filings, (doc. 171), and **GRANTS** Plaintiff's Motion to Seal its Memorandum in Opposition to Defendants' Motion to Stay Proceedings, (doc. 195). The Court **DIRECTS** the Clerk of Court to file the unredacted version of the Exhibits to the Declaration of Robert R. Riddle attached to Defendants' Motion to Stay Proceedings and Plaintiff's Memorandum in Opposition **UNDER SEAL** permanently. Defendants' Motion to Seal Multiple Filings shall remain pending in all other respects.

For the purposes of deciding Defendants' Motion to Seal, however, the Court need not, and does not, cite to the now-sealed, unredacted version of this Motion and Plaintiff's Memorandum. Given the Court's familiarity with this case and the related case, the information contained in the redacted versions of these documents is more than sufficient for the Court to fully consider and address the parties' arguments. Furthermore, by citing to the electronically filed redacted versions, the Court ensures the public's right of access to judicial records is not unduly compromised.

## II. Defendants' Motion to Stay Proceedings (Doc. 174)

### A. Legal Standard

This Court, like all district courts, maintains "broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254. In deciding whether to stay a case, "the district court must consider its own interests in an orderly disposition of its caseload, and the parties' competing interests in the two actions." Markel Int'l Ins. Co. v. O'Quinn, 566 F. Supp. 2d 1374, 1376 (S.D. Ga. 2008). Courts look to three factors when deciding if a case should be stayed: "(1) whether a stay will simplify the issues and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and the court; and (3) whether the stay will unduly prejudice the non-moving party." Shire Dev. LLC v. Mylan Pharm. Inc., No. 8:12-CV-1190-T-36AEP, 2014 WL 12621213, at *1 (M.D. Fla. July 25, 2014) (citations omitted). However, a stay may be warranted where a pending decision in another court would "have a substantial or controlling effect on the claims and issues in the stayed case." Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist., 559 F.3d 1191, 1198 (11th Cir.

2009); see also CIGNA Healthcare of St. Louis, Inc. v. Kaiser, 294 F.3d 849, 851 (7th Cir. 2002) (federal court may stay proceedings in a case before it because parallel proceedings are pending in another court).

### B. Whether the Court Should Stay This Case Pending the Related Appeal

Plaintiff does not dispute that the facts and legal issues at stake here significantly overlap with the facts and legal issues that were at stake in the infringement action. (See Docs. 34, 199.) As Defendants rightly observe, at the core of Plaintiff's case here is the same question that drove the infringement action litigation—does the Sanyo SANWET® Process constitute prior art which renders the '329 patent invalid? If the Federal Circuit were to overturn this Court's decision that the Process renders the '329 patent invalid, then the tactical posture and strength of Plaintiff's case here would be turned on its head. Putting aside for the moment the tremendous waste of judicial recourses such an outcome would bring in the absence of a stay here, a reversal of this Court's infringement-action decision as this case proceeds would significantly alter each party's respective positions in the midstream of litigation. Although Plaintiff posits that this case presents only three basic questions and is ready for trial, this characterization overlooks many significant outstanding issues: Defendants have yet to answer; any defenses or counterclaims they allege should they answer will need to be addressed; discovery disputes and motions to compel remain pending, as do expert and evidentiary objections; and the Court has yet to rule on several dispositive motions, at least one of which could turn on the outcome of the appeal of the related case, (doc. 183).

Most importantly, should this case proceed to judgment without a stay pending the appeal in the Federal Circuit, any judgment in favor of Plaintiff on its bad faith claims would become subject to probable attack in the event of a reversal. Similarly, the outcome of post-judgment motions for attorney's fees in this case could turn on, or at least be affected by, a Federal Circuit

10

reversal.  Given the uncertainty that would ensue without a stay pending the appeal's resolution, the most prudent course of action is to stay this case until the Federal Circuit reaches a decision on Defendants' appeal.  In other words, a stay is warranted here because the Federal Circuit's decision would "have a substantial or controlling effect on the claims and issues" in this case. Miccosukee Tribe of Indians of Fla., 559 F.3d at 1198.

Moreover, Plaintiff's chief argument against a stay—that Defendants failed to show a likelihood of success on the merits of their appeal—misapplies the Supreme Court of the United States' decision in Nken v. Holder, 556 U.S. 418 (2009).  Plaintiff relies on Nken for the proposition that "[a]bsent 'a strong showing that [a stay applicant] is likely to succeed on the merits' of an appeal, Nken, 556 U.S. at 434, there is simply no basis for concluding that a stay would result in anything but unwarranted delay and prejudice to Chemtall."  (Doc. 199, p. 9.) However, courts applying Nken have refused to divorce this notion from its context in that case, which concerned the stay of an immigration removal order while that order's appeal was ongoing, Nken, 556 U.S. at 423.  See, e.g. Whitworth v. SolarCity Corp., No. 16-CV-01540-JSC, 2017 WL 2081155, at *3 n.2 (N.D. Cal. May 15, 2017) (Nken standard of a strong showing of a likelihood of success on appeal applies where a party seeks to stay enforcement of a judgment or order pending appeal of that same judgment or order in the same case); RHI Refractories Liaoning Co. v. United States, 774 F. Supp. 2d 1280, 1284 n.3 (Ct. Int'l Trade 2011) ("This case presents facts that render Nken inapplicable" because "applicants merely wish to temporarily suspend the conduct or progress of litigation before the court, so that the Federal Circuit may resolve novel and complex questions that necessarily will affect the viability of their claims.  For these reasons, the court declines to use the test in Nken to review Plaintiffs' request." (citation and internal quotation marks omitted)).

Likewise, Plaintiffs misapply the "clear case of hardship or inequity" standard from Landis v. North American Company, 299 U.S. 248, 255 (1936), which is inapplicable to a request for a stay of a related action between the *same* parties.  In Landis, the Supreme Court held a stay suppliant must meet the hardship standard when "a litigant in one cause [will] be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Id. In this case, the party opposing the stay is also a party to the appeal—Plaintiff.  As such, no showing of hardship is required.  See SanDisk Corp. v. Phison Elecs. Corp., 538 F. Supp. 2d 1060, 1066 (W.D. Wis. 2008) ("[W]hen a parallel proceeding serves as the basis for a stay and the only potential 'damage worked' is to parties to both proceedings, there is no need for a party requesting a stay to make a special showing of hardship under Landis."); cf. Union Benefica Mexicana v. Indiana, No. 2:11 CV 482, 2012 WL 2049917, at *2 (N.D. Ind. June 6, 2012) ("When the litigants are not the same in the action before the other tribunal, the moving party must make a 'clear case of hardship or inequity in being required to go forward' if the nonmoving party can establish that it would be harmed by delay." (citation omitted)).

Looking to the three factors identified above, Plaintiff fares no better than it does under its mistaken legal standard.  Given the uncertainty wrought by pressing forward in this case while an appeal of its underpinnings remains, a stay here will simplify the issues and allow for a more streamlined trial.  With guidance from the Federal Circuit at hand, the parties and the Court alike will be able to more confidently and accurately proceed in this litigation, with potentially fewer issues at stake and undoubtedly less uncertainty.  Even if Defendants' alleged misconduct is actionable in the face of a valid '329 patent, as Plaintiffs assert, those particular claims which are bound up in the validity of the '329 patent will be more streamlined following the appeal's resolution.  And Plaintiff's claim that Defendants seek to relitigate already decided issues is both

speculative and depends on the Court deciding a disputed expert motion in their favor. (See Doc. 199, p. 13; doc. 172.)

Moreover, a stay will certainly reduce the burden of litigation on the parties and the Court by avoiding a potentially (in the event of a reversal) worthless expenditure of resources and by providing clarity, in the form of an appellate decision, to the Court in its rulings on the many other outstanding motions in this case. Paramount to this Court's decision to stay this case is the concern that vast amounts of judicial resources could be wasted if the Federal Circuit were to reverse while this case proceeded forward. Moreover, given the sheer volume of extensively briefed motions that await decision, and the Court's inherent interest in efficiently managing the many cases on its docket, a stay here will alleviate some litigatory burden while also allowing for a more efficient disposition of cases. In short, a stay allows the parties and the Court to forgo the burden of embarking on litigation that may prove pointless, even if it delays the outcome of this case.

Lastly, although Plaintiff argues that a stay will cause undue prejudice and a tactical disadvantage—in the form of spoliation of evidence, lost witnesses, and indefinitely pausing motions to compel discovery as well as this case in general—it argues little concrete, factual support for these assertions. As to lost evidence, the events underlying the '329 patent's validity occurred more than twenty years ago. (See Docs. 79-2; 84-2 (Plaintiff's Motion to Compel discovery of information between 1986 and 1999).) Evidence from decades-ago events is not going to change during this appeal; moreover, Plaintiff itself proclaimed that no further discovery was needed to support similar allegations that were not permitted to be raised in the infringement action. Mot., BASF Corporation v. Chemtall Inc., et al., 4:17-cv-251 (S.D. Ga. Aug. 15, 2017), ECF Nos. 198-1, 251. Additionally, Plaintiff fails to identify any specific witness who may succumb to health issues and be unable to testify in this action following the stay. This type of

unsubstantiated and purely theoretical claim is largely immaterial. Evolutionary Intelligence, LLC v. Millennial Media, Inc., No. 5:13–cv–04206–EJD, 2014 WL 2738501, at *6 (N.D. Cal. June 11, 2014) ("Speculation that evidence will be lost, without more, is insufficient to demonstrate undue prejudice."). Finally, this case will not be stayed indefinitely; rather it will be stayed with a definite end in sight—the Federal Circuit's decision of the infringement action appeal.[4] While Plaintiff speculates this case will be stayed through further appellate litigation, such as a petition for *en banc* review or for a *writ of certiorari*, that is neither Defendants' request nor this Court's decision.

Accordingly, the Court **GRANTS** Defendants' Motion to Stay Proceedings Pending Resolution of the Appeal of Related Action, (doc. 174), and **STAYS** this case, as well as the related miscellaneous actions, until the Federal Circuit Court of Appeals decides Defendants' currently pending appeal, BASF Corporation v. Chemtall Inc., et al., 19-1243 (Fed. Cir. November 30, 2018), ECF No. 2.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Stay Proceedings. (Doc. 174.) The Court HEREBY ORDERS that **ALL** proceedings in this case, including the related miscellaneous actions 4:18-mc-13 and 4:18-mc-18, are **STAYED** for such time until the Federal Circuit Court of Appeals renders a decision in BASF Corporation v. Chemtall Inc., et al., 19-1243 (Fed. Cir. November 30, 2018). Further, the Court **GRANTS** Plaintiff's Motion to Seal, (doc. 195), and **GRANTS in part** Defendants' Motion to Seal Multiple

---

[4] The median disposition time of District Court patent appeals before the Federal Circuit since 2009, docketing through decision, has ranged from eleven to fourteen months. (Doc. 228-2.) Although a delay of approximately one-year prejudices, to some extent, Plaintiff's interest in a speedy resolution of its case, this prejudice is decidedly outweighed by the interests discussed above. Furthermore, this case and its related infringement action have been in litigation since September of 2014, including an earlier stay of more than a year at Plaintiff's behest during IPR. In light of this procedural history, the prejudice caused by an additional stay is minimal and equitable.

Filings, (docs. 171).  The Court **DIRECTS** the Clerk of Court to: **STAY** this action until the United States Court of Appeals for the Federal Circuit resolves Defendant BASF Corp.'s appeal of its case docketed in Civil Action Number 4:17-cv-251, Appeal, BASF Corporation v. Chemtall Inc., et al., 19-1243 (Fed. Cir. November 30, 2018), ECF No. 2; **STAY** the related miscellaneous actions, which concern motions to compel discovery from third-party subpoena recipients in this case, docketed at Civil Action Numbers 4:18-mc-13 and 4:18-mc-18; and permanently **FILE** Defendants' unredacted Motion to Stay and the Exhibits to Robert R. Riddle's Declaration appended thereto as well as Plaintiff's unredacted Memorandum **UNDER SEAL**.  The Court **DISMISSES as moot** Plaintiff's Motion to Consolidate.  (Doc. 32.)

The parties are relieved of any discovery obligations including any obligations to respond to any discovery requests during the pendency of this stay.  The parties are **ORDERED** to apprise the Court within five (5) days of the Federal Circuit's ruling in BASF Corporation so that this stay may be lifted.  After such notice, the Court will set this matter down for a scheduling conference.

**SO ORDERED**, this 7th day of January, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA